# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.T.-1 and A.T-2.**

**No. 18-0455** (Ohio County 17-CJA-51 and 17-CJA-53)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.T.-3, by counsel Gerald G. Jacovetty, Jr., appeals the Circuit Court of Ohio County's April 16, 2018, order terminating his parental rights to A.T.-1 and A.T.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in not granting him an improvement period and terminating his rights instead of utilizing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 2, 2016, the DHHR filed an abuse and neglect petition alleging that the children had a history of severe physical abuse by the mother, that she was recently arrested and incarcerated on unrelated criminal charges, and that the children often refused to attend school. The DHHR alleged that petitioner was incarcerated at Grafton Correctional Facility in Grafton, Ohio. According to the DHHR, petitioner had an extensive criminal history that included a number of arrests and/or convictions for drug possession, drug abuse, drug trafficking, aggravated assault, parole violations, rape, kidnapping, felonious assault, and having a weapon under a disability. The DHHR alleged that petitioner "engaged in drug activity and violent behavior, which impair[ed] his ability to provide appropriately for his children and ensure their

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because both of the children and petitioner share the same initials, they will be referred to as A.T.-1, A.T.-2, and A.T.-3 respectively, throughout this memorandum decision.

1

safety." Finally, according to the DHHR, when petitioner was not incarcerated, he and the mother engaged in domestic violence in front of the children.

On December 28, 2017, the circuit court held an adjudicatory hearing. Petitioner did not attend because he was incarcerated, but was represented by counsel. There was no objection to the admission of petitioner's criminal record. It was noted that petitioner was expected to be incarcerated until 2025. The DHHR provided testimony that petitioner was unable to provide for the children. At the conclusion of that hearing, petitioner was adjudicated as an abusing parent.

On March 27, 2018, the circuit court held a dispositional hearing, for which petitioner appeared by video conference. Petitioner testified regarding his criminal record and incarceration. He admitted that he had not had much contact with the children throughout their lives due to his incarceration. He also admitted that he had been in and out of jail since 2001 and would not be able to provide much care to the children due to his continued incarceration until 2025. However, he explained that the proceeds from a book that he had written would provide financial support for the children. He further argued that he had changed and that he had become a "new" man during his current lengthy sentence. Petitioner testified that his mother could provide for the children in his absence. The DHHR presented testimony that petitioner sent the DHHR letters requesting that the children be placed with his mother. A DHHR worker testified that petitioner had a "very violent [criminal] history." The worker explained that services had not been provided to petitioner due to his incarceration. She also testified that the oldest child, A.T.-1, disclosed to her that petitioner was never involved in her or her sibling's life. The guardian informed the circuit court that A.T.-1 was fourteen-years-old and wished for petitioner's parental rights to be terminated.

The guardian and the DHHR recommended the termination of petitioner's parental rights. Petitioner objected to the termination of his parental rights and requested a less-restrictive disposition, pursuant to West Virginia Code § 49-4-604(b)(5), which provides that, upon a finding that the abusing parent is "presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court." However, the circuit court found that termination of petitioner's parental rights was necessary in order for the children to achieve permanency. The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that the termination of his parental rights was in the children's best interests. Petitioner's parental rights were terminated in the circuit court's April 16, 2018, order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

___

[2]The children's mother died during the pendency of the matter below. According to the parties, the permanency plan for the children is adoption by their paternal grandmother.

2

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in not granting him an improvement period. In support, petitioner argues that he has "experienced a change in circumstances as shown by his engaging in wanting to change his life." We do not find this argument persuasive. West Virginia Code § 49-4-610 provides that a parent may be granted an improvement period when the parent "files a written motion requesting the improvement period" and "demonstrates, by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period." Further, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements.")

Here, there is no evidence in the record that petitioner moved for an improvement period and the DHHR was unable to provide services to petitioner because he was incarcerated. Further, while petitioner argues that he participated in classes and programs at the facility at which he is incarcerated, it is clear that he was unable to participate in services provided by the DHHR to address issues of abuse and neglect. He also argues that he was pursuing an education and has written books, but it is unclear how these endeavors prove that he would be likely to substantially comply with an improvement period. Therefore, petitioner clearly failed to meet the requisite burden to receive an improvement period. Thus, the circuit court did not err in not granting petitioner the same.

Next, petitioner argues that the circuit court erred in terminating his parental rights. In support, he argues that he demonstrated "by clear and convincing evidence that there is a reasonable likelihood that conditions of abuse and neglect can be substantially corrected." We disagree. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c) clearly provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing [parent has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Based on the record before this Court, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect due to his lengthy criminal history. Petitioner has a history of involvement in drug-related and violent crimes, has been in and out of jail since 2001, and was absent for the majority of his children's lives. Further, when he was not incarcerated, petitioner subjected the children to domestic violence in the home. While petitioner argues that he has changed and bettered himself while incarcerated, there is no evidence other than his own testimony, to support this assertion. Therefore, the circuit court correctly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Petitioner also argues that the termination of his parental rights was not in the children's best interests because he shows concern for them and has a bond with them. He also asserts that he provided food for them and participated in activities with them. However, there is no evidence in the record to support these assertions. In fact, the oldest child disclosed to the DHHR worker that petitioner was never in the children's lives and that she wished for petitioner's parental rights to be terminated. Further, because petitioner will be incarcerated until 2025, the children need continuity of care and permanency, which can be achieved by adoption with the paternal grandmother. Therefore, termination of petitioner's parental rights was in the children's best interests.

Further, petitioner argues that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5) because, although he is presently unable to care for his children, he "will be able to do so in the future." However, whether he will be able to care for his children in the future is purely speculative, and we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As discussed, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because he will be incarcerated until 2025. Petitioner's oldest child will be over the age of majority by the time he is released. The children need permanency and continuity of care while petitioner remains incarcerated. Therefore, the termination of petitioner's parental rights was necessary in order to establish permanency for the children. Thus, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 16, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment